# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                    SUPERIOR COURT DEPARTMENT
                                  CIVIL ACTION NO: 11-2645


EDWIN BLEILER,

                    Plaintiff,

v.

COLLEGE OF THE HOLY CROSS,


                    Defendant,,


# REMOVAL TO U. S.  DISTRICT COURT

# Commonwealth of Massachusetts
## SUPERIOR COURT DEPARTMENT
## THE TRIAL COURT
## WOBURN

MICV *2011-2645*

I, C. Andrew Johnson, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on this *28th* Day of *July* in the year of our Lord *2011*.

In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Woburn, in said County, this *6th* Day of *September* in the year of our Lord Two Thousand Eleven.

C. Andrew Johnson
Deputy Assistant Clerk



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

SEP 0 2 2011

C.A. No. _____ CLERK

EDWIN BLEILER,

    Plaintiff,

v.

COLLEGE OF THE HOLY CROSS,

    Defendant.

## NOTICE OF REMOVAL

The defendant College of the Holy Cross ("Holy Cross") hereby gives notice that

pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, it is removing this action from the

Commonwealth of Massachusetts Superior Court, Middlesex County, to the United States

District Court for the District of Massachusetts (Eastern Division). The grounds for removal are

set forth below.

1.    Plaintiff Edwin Bleiler ("Mr. Bleiler") filed a Complaint against Holy Cross in

Middlesex County (Massachusetts) Superior Court on July 28, 2011. The case is captioned

*Edwin Bleiler v. College of the Holy Cross*, Middlesex Superior Court, Civil Action No. 2011-

02645. The Complaint is attached as Exhibit A.

2.    On August 12, 2011, Holy Cross was served with a copy of the Complaint and

summons.

3.    The time within which Holy Cross is required by 28 U.S.C. § 1446(b) to file this

Notice of Removal has not expired.

4.    Based on information contained in the Complaint, Mr. Bleiler is a permanent

resident of Sudbury Massachusetts. (*See* Complaint, ¶ 1, Ex. A.)

#10583465_v1

5.     Holy Cross is a private, not-for-profit college located in Worcester, Massachusetts.

6.     This action may be removed to this Court by Holy Cross pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441(a) and 28 U.S.C. §1441(b) because Bleiler asserts a claim arising under the laws of the United States, specifically Title 20 of the United States Code, section 1681 ("Title IX") (*See* Complaint, Count I, Ex. A.)

7.     Venue is proper pursuant to 28 U.S.C. § 1446(a) because this Court is the United States District Court for the district and division embracing the place wherein the state court action is pending.

8.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Civil Division of the Middlesex County Superior Court.

9.     Pursuant to Local Rule 81.1(a), certified or attested copies of all records, proceedings, and docket entries in the Middlesex Superior Court action shall be filed with this Court within twenty-eight (28) days.

WHEREFORE, Holy Cross requests that this action proceed before this Court as an action properly removed.

Respectfully submitted,

COLLEGE OF THE HOLY CROSS


/S/ HAROLD W. POTTER, JR.
Harold W. Potter, Jr. (BBO No. 404240)
Katrina N. Chapman (BBO No. 676177)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700
harold.potter@hklaw.com
Dated:  September 1, 2011          katrina.chapman@hklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished by mail to counsel for the plaintiff, this 1st day of September, 2011.

/S/ HAROLD W. POTTER, JR
Harold W. Potter, Jr.

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
CIVIL ACTION NO. 2011-02645

EDWIN BLEILER,

    Plaintiff,

v.

COLLEGE OF THE HOLY CROSS,

    Defendant.

**C.A. NO. 11-02645**

*FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE COUNTY OF MIDDLESEX SEP 0 1 2011 CLERK*

## NOTICE OF FILING NOTICE OF REMOVAL

Please take notice that on September 1, 2011, the Defendant College of the Holy Cross

filed in the United States District Court for the District of Massachusetts its Notice of Removal

of this action to the United States District Court (Boston Division). A copy of the Notice of

Removal is attached as Exhibit A.

Pursuant to 28 U.S.C. § 1446(d), this notice is hereby provided to the Superior Court of

the Commonwealth of Massachusetts, Middlesex County, to effect removal.

Respectfully submitted,

COLLEGE OF THE HOLY CROSS

Harold W. Potter, Jr. (BBO No. 404240)
Katrina N. Chapman (BBO No. 676177)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, Massachusetts 02116
harold.potter@hklaw.com
katrina.chapman@hklaw.com
(617) 523-2700

Dated: September 1, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished by mail to counsel for the plaintiff, this 1st day of September, 2011.

_____
Harold W. Potter, Jr.

# Holland & Knight

10 St. James Avenue | Boston, MA 02116 | T 617.523.2700 | F 617.523.6850
Holland & Knight LLP | www.hklaw.com

September 1, 2011

Harold W. Potter, Jr.
617 854 1418
harold.potter@hklaw.com

**VIA FEDERAL EXPRESS**

Civil Clerk's Office
Middlesex Superior Court
200 Trade Center, 2nd Floor
Woburn, MA 01801

> Re: *Edwin Bleiler v. College of the Holy Cross*
> *Middlesex Superior Court, C.A. No. 2011-02645*
> *(REMOVED TO FEDERAL DISTRICT COURT)*

Dear Sir/Madam:

Enclosed for filing in connection with the above-referenced matter, please find a Notice of Filing Notice of Removal to Federal Court with Notice of Removal attached as Exhibit A.

Please arrange for a certified copy of all entries, records, and proceedings of the docket in this matter to be forwarded to my attention at your earliest convenience. Also for your convenience, I have enclosed a return Federal Express envelope.

Please contact me should you have any questions.

Sincerely yours,

HOLLAND & KNIGHT LLP

Harold W. Potter

Enclosures

cc: Nicole A. Longton, Esq.
Emily E. Smith Lee, Esq.
Katrina N. Chapman, Esq.
w/Enclosure

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:



11-2645

EDWIN BLEILER
Plaintiff

v.

COLLEGE OF THE HOLY CROSS,
Defendant

)
)
)
)
)

## COMPLAINT

Plaintiff Edwin Bleiler, through counsel, alleges as follows:

### NATURE OF THE ACTION

This is an action for preliminary and permanent injunctive relief and damages arising

from the Defendant College of the Holy Cross's wrongful expulsion of the Plaintiff resulting

from the application of "disciplinary procedures" that were in violation of the College's rules and

policies, the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §§

1681-1688 (2011)("Title IX") and its implementing of regulation at 34 C.F.R. 106, and

principles of due process and fundamental fairness.

### PARTIES

1. Plaintiff Edwin Bleiler ("Mr. Bleiler") is a permanent resident of Sudbury, Massachusetts.

2. Defendant College of the Holy Cross ("College") is a private, non-profit college located in

   Worcester, Massachusetts.

3. Plaintiff Mr. Bleiler was a full time student at the College until his expulsion from the

   College, effective on May 26, 2011.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the College because its principal place of business is in the Commonwealth.

5. Venue is proper in this Court pursuant to M.G.L. c. 223, §§ 1 and 8 because the Plaintiff resides in Middlesex County.

## FACTUAL ALLEGATIONS

### I.  Background and Relationship of the Parties

6. Established in 1843, the College is a private, non-profit school granting undergraduate degrees.

7. Mr. Bleiler was a full-time student at the College from September 2007 until his expulsion on May 26, 2011.

8. At the time of his expulsion he had successfully completed the coursework with a 3.13 GPA and the full 32 credits necessary to graduate and receive his degree on May 26, 2011.

9. In early May 2011, another student at the College, C.M. made a complaint to the College that she and Mr. Bleiler had engaged in sexual intercourse at a time when she was intoxicated and therefore unable to give effective consent.

10. Mr. Bleiler, in turn, maintains that C.M. was not incapacitated and that she willingly engaged in sexual relations with him.

11. Through the disciplinary procedures outlined below, the College conducted a hearing, which resulted in Mr. Bleiler's expulsion from the College on the very same day he would have graduated.

## II.     Relevant Disciplinary Policies and Procedures as set forth in the Student Handbook

12. The College promulgates a document published on a yearly basis, this year titled "College of

the Holy Cross – Student Handbook and Planner 2010-2011" ("Handbook").

13. The Handbook contains, *inter alia*, a statement of Community Standards and Disciplinary

Procedures for Students ("Disciplinary Procedures"), which sets forth in part the following

language:

> . . . In the case of disciplinary procedures, students have the right
> to be informed of any charges of misconduct, the right to adequate
> time to prepare a response to the charges, the right to hear
> information in support of the charges, the right to present evidence
> against the charges, *and the right to a fair process which is*
> *appropriate to the circumstances.*

(emphasis added).

14. Under the section titled Authority for Student Discipline, the Handbook states that:

> The purpose of disciplinary proceedings is to provide fair
> evaluation of student's responsibility for violating college
> regulations. The rules of evidence are not applied, nor shall
> deviations from prescribed procedures necessarily invalidate a
> decision, unless significant prejudice to a student respondent or the
> college may result.

15. Any Student who is accused ("Accused") of violating policy in a way that may result in

suspension or dismissal from the College may be referred to the Community Standards Board

("Board"). Prior to hearing, the Accused and the Student Complainant will meet separately

with the hearing coordinator.

16. The parties may inspect the case file at the Office of Student Conduct before hearing but may

not copy or remove the file. The Board shall receive all written materials before hearing.

17. The Board is comprised of five members, two students, at least one faculty member, and at

least one staff member; the fifth member can be either faculty or staff. The Handbook sets

3

forth the following policy and rules regarding board members and potential conflict of

interest:

> The accused and the accuser are informed of the names of the
> members of the hearing panel scheduled to hear the complaint not
> fewer than 72 hours prior to the hearing. If the accuser or the
> accused has particular information as to why a specific person
> should not be a part of the panel hearing the case, either of these
> parties must present the information to the Director of Student
> Conduct and Community Standards or designated hearing
> coordinator in writing 48 hours prior to the start of the hearing. If
> the Director deems that there is information to suggest a potential
> conflict, another board member will be substituted. The decision of
> the Director or hearing coordinator is final.

> Board members are expected to notify the Director or hearing
> coordinator and disqualify themselves from serving on a board if
> they suspect a potential conflict with any party participating in a
> board hearing.

18. Furthermore, the Disciplinary Procedures require confidentiality and no communication

    between the Accused, Accuser, witnesses or Board members prior to hearing. "Any act

    which violates this confidentiality may be dealt with as a subsequent violation or as grounds

    for dismissal from the hearing."

19. Upon conclusion of the hearing the Board adjourns for deliberations. The Director or hearing

    coordinator may meet with the Board for consultation regarding procedural elements any

    time before or during hearing or deliberations.

20. The Handbook, however, does *not* provide for the Hearing Officer's participation in actual

    deliberations, nor does it authorize the Hearing Officer to be present for the entirety of the

    deliberations.

21. A student has the right to appeal a Board decision if he or she can demonstrate a) a lack of

    fairness in the procedures b) a violation of process, or c) if there is significant new

information (previously unknown) that has been revealed or discovered which alters the facts of the matter and may alter the outcome.

22. The Disciplinary Procedures provide that Board hearings, but not its deliberations, are recorded and that appealing students may listen to but may not obtain a copy of the recording.

23. The Disciplinary Procedures further provide that recordings, notes, and all materials related to a case remain the sole property of the College and that on ***most occasions***, at the completion of the internal appeal process these recordings are destroyed. (emphasis added).

24. Appeals of expulsions are reviewed by the College President. While the sanction's severity is not grounds for appeal, a student may ask that the appeals officer review the sanction as part of the appellate process. An appeal must be received within five days of the date of the decision letter. If denied, the sanction is immediately imposed.

**III.    The College's Sexual Misconduct Policy**

25. The Handbook defines "Sexual Misconduct 1" as "any sexual penetration...however slight, with any object or sexual intercourse by a man or a woman upon a man or a woman without effective consent..."

26. The policy goes on to state that "consent may ***never*** be given by...those who are incapacitated as a result of alcohol or other drug consumption (voluntary or involuntary). (emphasis added).

27. As set forth in the Handbook, and as enforced in Mr. Bleiler's case, the College's sexual misconduct imposes a form of strict liability on male students: if a male and female student are both intoxicated and engage in sexual activity, the male student could face expulsion for

violation of the policy without any evidence of coercion, manipulation, force, or any additional culpable behavior.

28. Representatives of the College have acknowledged in the press that male students could face catastrophic consequences for behavior that may not be any more culpable than that of their sexual partner:

> I think on College campuses we've focused a lot on talking to young women about, you know, partying safe and not leaving your friend alone and watching your drink and that. ***But I think we haven't done enough with our young men to say, you know, if you get involved with a young woman and you do not know her all that well and you've been drinking, you know, this is a warning sign. This is not something that you want to engage in because of what possible consequences could be.*** And we know that in these situations that young men and women are not clearly communicating about, you know, what they want to engage in and what's okay in each step, you know, and that doesn't happen. And that's part of the confusion in the issue on our campuses.

http://www.npr.org/templates/story/story.php?storyId=124199190 (March 10, 2010 interview with College's Director of Student Conduct and Community Standards Paul Irish) (emphasis added).

29. On information and belief, the sexual misconduct policy has only been enforced against male students at the College.

30. The allegations against Mr. Bleiler were solely that he had sexual intercourse with C.M. without effective consent, and that she could not give effective consent due to her intoxication.

31. There were no allegations of coercion or force, and there was no allegation that Mr. Bleiler was responsible for C.M.'s intoxication.

**IV. The College's Violations of Disciplinary Procedures and Denial of a Fair Process**

32. The Board hearing took place on May 18, 2011.

33. Despite Mr. Bleiler's timely, written objections to one of the student Board members on the grounds of a conflict, Paul Irish, the Hearing Coordinator ("Hearing Coordinator"), refused to replace that student.

34. Mr. Irish's sole stated bases for this refusal were that: (i) he had already "released" the backup panelists; and (ii) the Board member had represented that he had no conflicts with either student.

35. On information and belief, Mr. Irish conducted no meaningful inquiry into the possibility of bias or a conflict with respect to this Board member.

36. The name of the other student Board member was misspelled in the notice to Mr. Bleiler, therefore he was unable to determine initially if there was any conflict.

37. By chance, and within the 48 hour period required by the rules, Mr. Bleiler learned the correct spelling of her name, and that she was also friends with C.M.

38. Mr. Bleiler raised this concern as well with Mr. Irish, as permitted by the handbook.

39. Mr. Irish responded by stating that such a relationship was not grounds for an "automatic" disqualification of a Board member, and declined to replace her.

40. In fact, as Mr. Irish was aware prior to the hearing, the second student Board member had been C.M.'s Resident Assistant ("RA").

41. RA's at the College are responsible for advising and assisting the students in their charge on a host of issues, including "Assist[ing] individuals with personal, social and academic concerns in an atmosphere of support and confidentiality," and "Educat[ing] students with regard to personal safety, theft, fire prevention, and policies regarding sexual misconduct.

42. As C.M.'s RA, therefore, the second student Board member had likely established a personal relationship with C.M. as advisor and confidante, and may have even provided advice and counseling on the very policies that were the subject of Mr. Bleiler's disciplinary hearing.

43. Mr. Irish did not take any action to replace this student on the Board.

44. The bias of the first student Board member was manifest during the hearing by his disparate treatment of C.M. and her witnesses as opposed to Mr. Bleiler. While the Board member was effusive in praising the former, his hostility towards Mr. Bleiler was so overt, in the form of aggressive badgering, that the Board's chair had to verbally restrain him.

45. The College further violated both its written procedures and fundamental fairness by allowing Mr. Irish to participate in the Board's deliberations.

46. Mr. Irish's role in the pre-hearing procedure required him to discuss the allegations with both parties and witnesses, and to review statements and evidence prior to the hearing that were not necessarily part of the testimony to the Board, and therefore not subject to cross-examination.

47. Mr. Irish, moreover, has expressed his bias regarding these kinds of claims in the national press. Asked in an interview what people should draw from a discussion about college disciplinary procedures and alleged sexual misconduct, Mr. Irish said:

> Oh, I think this is a pervasive problem on all our campuses. It's very underreported and we really have to ask: *Why is it so underreported? What can we do to make victims feel comfortable to come forward, to feel supported* and to let people know that when there is an outcome, that it's a very serious outcome with everlasting, you know, life-altering, you know, consequences?

http://www.npr.org/templates/story/story.php?storyId=124199190 (March 10, 2010) (emphasis added).

48. Despite his extensive *ex parte* contact with both witnesses, receipt of information outside the proceedings themselves, and potential bias of his own, Mr. Irish was present at all times during the Board's deliberations.

49. While the Disciplinary Procedures permit the Board to ***consult with*** the Hearing Coordinator during deliberations regarding procedural elements, neither the Disciplinary Procedures nor the relevant law permit the participation in deliberations of a person in a prosecutorial role, as the *ex parte* presentation of evidence in the fact-finding process denies basic fairness.

50. Mr. Bleiler is unable to determine how Mr. Irish's participation in deliberations may have influenced the Board's decision. As the contents of deliberations were unrecorded and thus remain unknown to Mr. Bleiler, he therefore had no opportunity to respond.

51. In addition to the aforementioned violations, the Disciplinary Procedures were riddled with other problems. For example, though the investigating Public Safety Officer who appeared at the hearing assured the Board that witnesses were separated during the investigation to ensure accuracy and avoid contamination of their testimony, two of C.M.'s key witnesses acknowledged that they were seated together while they were waiting during the process of the initial investigation.

52. Further, C.M. testified at hearing to her virginity before having sexual relations with Mr. Bleiler, constituting impermissible, and prejudicial, "irrelevant sexual history" explicitly prohibited by the Handbook.

53. Finally, Mr. Bleiler's nominal appellate rights under the College policies were rendered meaningless by the restrictions those policies place on access to information about the proceedings.

54. Mr. Bleiler was only permitted to listen to the audio recordings of the hearing in preparing his appeal, and was not allowed to copy it or bring an advisor or counsel in to listen with him.

55. Because no record whatsoever was kept of the deliberations, moreover, Mr. Bleiler was unable to ascertain the extent of the prejudice caused by Mr. Irish's improper participation in the deliberations.

56. The combined effect of these procedural violations, acts and omissions resulted in significant prejudice to Mr. Bleiler, and made fair hearing and deliberations impossible.

## V.    Consequences to Mr. Bleiler

57. Mr. Bleiler was expelled after having completed all requirements necessary to graduate from the College: he completed all coursework, received grades and the number of credits necessary to graduate.

58. Mr. Bleiler (or others on his behalf) paid a full four years' tuition and fees to the College, totaling approximately $220,000.

59. Without a College diploma and degree, Mr. Bleiler cannot apply to graduate school, nor does he have any reasonable prospects of employment commensurate with his education. As a result, Mr. Bleiler faces catastrophic present and future economic loss.

60. Further, with expulsion for "sexual misconduct" on his record, Mr. Bleiler may not even be able to enroll at another institution of comparable quality in order to repeat some of his requirements and re-earn his college degree.

**COUNT I**
**Violation of 20 U.S.C. § 1681(Title IX)**

61. Plaintiff re-alleges and reasserts the allegations in Paragraphs 1 through 54 as if fully set forth herein.

62. Title IX states in pertinent part: "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance..." 20 U.S.C. § 1681(a).

63. The College receives federal funding under Title IX, 20 U.S.C. §§ 1681-1688 (2011).

64. As a Title IX recipient, the College is required to comply with the requirements of Title IX as well as those of the regulations promulgated thereunder by the Department of Education.

65. These regulations require each school receiving Title IX funds to "adopt and publish grievance procedures providing for the *prompt and equitable* resolution of student ... complaints alleging any action which would be prohibited by Title IX or its regulations." 34 C.F.R. 106.8 (2010). (emphasis added).

66. The regulations further require that "a school's procedures must accord *due process to both parties* involved ..." (emphasis added). *See* Title IX (2001) "Revised Sexual Harassment Guidance" at 22 (notice of publication at 66 Fed. Reg. 5512, January 19, 2001).

67. The College's disciplinary policies, as written and as implemented in Mr. Bleiler's case, are not equitable and do not accord due process to the accused.

68. On information and belief, the fundamental unfairness that imbued Mr. Bleiler's disciplinary process, as well as the erroneous outcome, are part of a pattern of decision-making that discriminates against male students accused of sexual misconduct.

69. In addition, the sexual misconduct policy at issue, both as written and as enforced against Mr. Bleiler, imposes an unequal burden on male and female students for the same behavior: engaging in sexual activity while intoxicated.

70. As a result of the College's enforcement of this policy and its failure to comply with the other requirements under Title IX with respect to its disciplinary procedures, Mr. Bleiler has been denied the benefits of the College's educational program in violation of Title IX.

## COUNT II
## Breach of Contract

71. Plaintiff re-alleges and reasserts the allegations in Paragraphs 1 through 71 as if fully set forth herein.

72. Plaintiff and the Defendant College had a contractual relationship, either express or implied. Such contract was formed on the one hand by Mr. Bleiler's payment (or payment made on his behalf) of tuition and fees to the College and on the other, by the terms contained in the Student Handbook, the College Catalogue, and other College materials.

73. Mr. Bleiler had a reasonable expectation that the College would adhere to the terms of such contract, as contained in the Disciplinary Procedures and other College materials.

74. Mr. Bleiler further had a reasonable expectation that the College's stated procedures would comply with the requirement under the Title IX regulations to provide an equitable process for adjudicating claims of sexual misconduct and to ensure due process to both the accuser and the accused.

75. The College breached the terms of its contract with Mr. Bleiler by violating its Disciplinary Procedures as set forth above, and in particular, by allowing conflicted members to serve on the Board; through the participation in the Board's unrecorded deliberations by the Hearing Officer, who before the hearing had separately met with and taken statements from Mr. Bleiler and C.M.; through the College's failure to sequester witnesses during the investigatory process; and through the admission at hearing of C.M.'s irrelevant sexual history, all in violation of the Disciplinary Rules.

76. The College through its policy further deprived Mr. Bleiler of cross examination of two witnesses whose statements were part of the record but who did not testify; and denied Mr. Bleiler meaningful appeal by not allowing him to copy the recorded hearing and by failing to make any record of the Board's deliberations.

77. Defendant College's procedural violations, acts and omissions as described herein rendered the proceedings unfair, contravening the specific Handbook provision entitling students to "the right to a fair process which is appropriate to the circumstances."

78. Such failures combined to cause Mr. Bleiler significant prejudice in that he was denied an even-handed assessment of the facts, resulting in his expulsion and forfeiture of the diploma that he had fully earned at the time of the decision.

### COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing

79. Plaintiff re-alleges and reasserts the allegations in Paragraphs 1 through 79 as if fully set forth herein.

80. Massachusetts law recognizes an implied covenant of good faith and fair dealing in all contracts, either express or implied.

81. By the conduct alleged herein, the College has breached the implied covenant of good faith and fair dealing, and caused harm to Mr. Bleiler.

### COUNT IV
### Unjust Enrichment

82. Plaintiff re-alleges and reasserts the allegations in Paragraphs 1 through 82 as if fully set forth herein.

83. In the alternative, should this Court find no remedy at law available to Plaintiff, Plaintiff pleads Unjust Enrichment.

84. The college received a substantial monetary benefit, approximately $220,000 in the form of four years' tuition and fees paid in full by Mr. Bleiler or on his behalf before disciplinary proceedings commenced.

85. As set forth above, due to gross and numerous violations of its Disciplinary Procedures and its policy regarding access to and preservation of the record, the process by which the College found Mr. Bleiler responsible for the alleged acts was inherently flawed and fundamentally unfair, causing Mr. Bleiler significant prejudice.

86. As a result, Mr. Bleiler is left without a diploma and degree despite having completed all requirements for graduation.

87. For the reasons set forth herein, under the circumstances it would be inequitable for the College to retain the tuition it has received from the Bleiler family.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Edwin Bleiler requests that the Court:

    i.     Enjoin the College from enforcing its order of expulsion and from retaining Mr. Bleiler's diploma;

    ii.     Award damages for the harm to Mr. Bleiler arising from the Defendant's improper conduct; and

    iii.     Award such other legal or equitable relief as may be appropriate.

Respectfully submitted,
EDWIN BLEILER
By his attorneys:


Nicole A. Longton
Longton Law Office
316 Main Street, Suite 400
Worcester, MA 01608
Office – 508-793-2000
Fax – 508-300-0083
nicole@longtonlaw.com


Emily E. Smith-Lee (BBO# 634223)
Smith Lee Nebenzahl LLP
One Post Office Square
Sharon, MA 02067
781-784-2322
781-793-0600 (facsimile)
eslee@smithleelaw.com

Dated: July 28, 2011

| **CIVIL ACTION COVER SHEET** | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF MIDDLESEX | DOCKET NO 11-2645 |

| **PLAINTIFF(S)** | **DEFENDANT(S)** |
| Edwin Bleiler | College of the Holy Cross |

Plaintiff Atty  Emily Smith-Lee

Address  One Post Office Square

City  Sharon  State  MA  Zip Code  02067

Tel.  +1 (781) 784-2322  BBO#  634,223

Type Defendant's Attorney Name

Defendant Atty

Address

City  State  Zip Code

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

CODE NO.      TYPE OF ACTION (specify)      TRACK      IS THIS A JURY CASE?

A99 Other (specify ) - Fast Track

[ ] Yes  [ ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
### (Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1. Total hospital expenses                                $
2. Total doctor expenses                                  $
3. Total chiropractic expenses                            $
4. Total physical therapy expenses                        $
5. Total other expenses (describe)                        $
                                          Subtotal         $

B.  Documented lost wages and compensation to date        $
C.  Documented property damages to date                   $
D.  Reasonably anticipated future medical expenses        $
E.  Reasonably anticipated lost wages and compensation to date  $
F.  Other documented items of damages (describe)
                                                          $
G.  Brief description of plaintiff=s injury, including nature and extent of injury (describe)

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
JUL 28 2011
CLERK

### CONTRACT CLAIMS
### (Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Claim for breach of contract and violation of Title IX, seeking injunctive relief and/or damages of up to $200,000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

AI hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.@
Signature of Attorney of Record                              Date: 7/28/11
A.O.S.C. 3-2007

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET # MICV2011-02645-B

**Courtroom Civil B- Ct Rm 720- 200 TradeCenter, Woburn**

RE: **Bleiler v College Of The Holy Cross**
TO:

Emily E Smith-Lee, Esquire
Smith Lee Nebenzahl
One Post Office Square
Sharon, MA 02067

## SCHEDULING ORDER FOR  F  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **05/18/2013**.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 10/26/2011 | 10/26/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 11/25/2011 | |
| All motions under MRCP 12, 19, and 20 | 11/25/2011 | 12/25/2011 | 01/24/2012 |
| All motions under MRCP 15 | 11/25/2011 | 12/25/2011 | 01/24/2012 |
| All discovery requests and depositions served and non-expert depositions completed | 05/23/2012 | | |
| All motions under MRCP 56 | 06/22/2012 | 07/22/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/19/2012 |
| Case shall be resolved and judgment shall issue by **05/18/2013** | | | **05/18/2013** |

- **The final pre-trial deadline is <u>not the scheduled date of the conference</u>.**
- **You will be notified of that date at a later time.**
- **Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

Dated: 07/28/2011

Michael A. Sullivan
Clerk of the Court

Telephone: 781-939-2748

MASXP-20091228
pinkneym

Commonwealth of Massachusetts
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

09/06/2011
11:32 AM

# MICV2011-02645
## Bleiler v College Of The Holy Cross

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 07/28/2011 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 09/02/2011 | **Session** | B - Civil B CtRm 720 (Woburn) | | |
| **Origin** | 1 - Complaint | **Case Type** | A99 - Misc contract | | |
| **Track** | F - Fast track | **Lead Case** | | **Jury Trial** | No |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | 11/25/2011 | 11/25/2011 | 05/23/2012 | 06/22/2012 | | |
| **Filed By** | 10/26/2011 | 11/25/2011 | 12/25/2011 | 12/25/2011 | | 07/22/2012 | | 05/18/2013 |
| **Heard By** | | | 01/24/2012 | 01/24/2012 | | | 11/19/2012 | |

### PARTIES

**Plaintiff**
Edwin Bleiler
Sudbury, MA
Active 07/28/2011

**Private Counsel 634223**
Emily E Smith-Lee
Smith Lee Nebenzahl
One Post Office Square
Sharon, MA 02067
Phone: 781-784-2322
Fax: 781-793-0600
Active 07/28/2011 Notify

**Defendant**
 College Of The Holy Cross
Worcester, MA
Service pending 07/28/2011

**Private Counsel 404240**
Harold W Potter Jr
Holland & Knight
10 St James Avenue
11th Floor
Boston, MA 02116
Phone: 617-573-5815
Fax: 617-523-6850
Active 09/02/2011 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 07/28/2011 | 1.0 | Complaint & civil action cover sheet filed |
| 07/28/2011 | | Origin 1, Type A99, Track F. |
| 09/02/2011 | 2.0 | Case REMOVED this date to US District Court of Massachusetts by deft College Of The Holy Cross, |
| 09/02/2011 | | Findings: Above action this day removed to U.S.District Court. |

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system on September 13, 2011, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by sending paper copies to non-registered participants as indicated on the NEF.

*/s/ Harold W. Potter, Jr.*
Harold W. Potter, Jr.