UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWIN BLEILER,<br>                  Plaintiff,<br>v.<br><br>COLLEGE OF THE HOLY CROSS,<br>                  Defendant. | 1:11-CV-11451-DJC |

**REPLY MEMORANDUM
OF
THE COLLEGE OF THE HOLY CROSS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edwin Bleiler ("Bleiler") has submitted an opposition to the Motion for Summary Judgment filed by the College of the Holy Cross ("College" or "Holy Cross"). Bleiler's opposition focuses on two points. The first is that the College's policies, panel members, and panel administrator were biased against Bleiler and against men in general. The second is that the College departed from its stated policies in the Handbook, when it dismissed Bleiler. Neither is supported by the record or the law.

**ARGUMENT**

THERE ARE NO MATERIAL FACTS IN DISPUTE NOTWITHSTANDING BLEILER'S ATTEMPTS TO MANUFACTURE SOME

The College provided a concise but detailed statement of undisputed facts, fully supported by citations to the discovery record as required by Local Rule 56.1. In response, Bleiler deemed each fact to be disputed or undisputed in his "Response to the College's

Statement of Facts" ("Response Facts"), and filed his own "Plaintiff's Statement of Disputed/Additional Facts" ("Additional Facts").[1]

A. **Bleiler Does Not Dispute Key Facts.**

Bleiler does not dispute or provide contrary authority to paragraphs 1-67, 69, 72-77, 79-110, 112-23 of Holy Cross's Statement of Undisputed Facts. *See generally* Response Facts. Instead, Bleiler often adds unresponsive or unsupported statements in an attempt to create a material fact in dispute.

1. *Bleiler Admits Key Facts.*

Bleiler admits:

> 28. Six students at the College have been charged with Sexual Misconduct I since 2002.
>
> 29. Four have been found responsible. Of the four found responsible, three were dismissed from the College and one received a one-year suspension.
>
> 30. There are no known complaints of a violation for Sexual Misconduct I made by a male student against a female student at the College.

Response Facts ¶¶ 28-30. These admitted facts compel the conclusion that dismissal from the College was the most likely sanction for students found responsible for Sexual Misconduct I. These admitted facts dispel the claim that the panel or Irish was biased against Bleiler. Only one student found responsible for Sexual Misconduct I in the past ten years was allowed to return to the College. Bleiler was not singled out or treated differently.

These admitted facts compel the conclusion that the outcome was not predetermined. Only four of the six students were found responsible. Moreover, Bleiler has no factual basis to

---

[1] Both parties have submitted appendices in conjunction with their summary judgment pleadings. Where cited in this memorandum, the Appendix provided by Bleiler will be cited as "Bleiler App." The Appendix provided by Holy Cross in its initial motion for summary judgment will be referred to as "College App."

assert that Holy Cross's Sexual Misconduct policy has been enforced against men in violation of Title IX because there have been no complaints raised by female students against male students on which to base a claim of discrimination.

Bleiler also admits:

> 49. The College advises students that the rules of evidence found in legal proceedings do not apply, nor shall deviations from proscribed procedures necessarily invalidate a decision unless "significant prejudice" to a student respondent or to the College may result.
>
> 65. . . . If either party [the accused or the accuser] has information as to why a specific person should not be part of the panel, the party must present the information to the Director or hearing coordinator [Paul Irish] in writing no fewer than forty-eight hours prior to the start of the hearing.
>
> 66. The decision of the Director or hearing coordinator [Irish] as to whether a conflict exists is final.

Response Facts ¶ 49, 65, 66.

All of Bleiler's reasonable expectations were met. *See Schaer v. Brandeis Univ.*, 434 Mass. 474, 481, 735 N.E.2d 373, 380 (2000); *see also Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007). There is no basis for Bleiler's assertions that the College's failure to allow him to cross-examine C.M. regarding one statement,[2] allowing a Public Safety officer to mention that Bleiler invoked his right to remain silent,[3] or Irish's decisions regarding the

---

[2] Bleiler had the opportunity to question C.M. about her virginity, or anything else for that matter. Both students had an opportunity to question each other at the hearing through the Chairman of the panel, and *only* C.M. took the opportunity to do so. In fact, C.M. asked Bleiler if he knew she was a virgin. (College App.; Hearing Transcript Ex. F 33:16-34:1; 40:7-20.) Direct questioning between the accused and accuser is not allowed. Had the College allowed Bleiler to cross-examine C.M. directly, it would have departed from its policies that discourage contact between the accused and accuser at any point after the incident. (*See* College App.; Potter Aff. Ex. A, tab 1 Ex. 2.) In compliance with this policy, Bleiler and C.M. did not speak to each other during the hearing, and a partition was placed between them so they could not see each other. (College App.; Bleiler Dep. 103:12-16; Potter Aff. App. Ex. A, tab 1.). This method is preferred by the OCR. (*See* Dear Colleague Letter, College App. Ex. D at 12.)

[3] The panel had latitude under its rules to allow this statement. Moreover, there was no prejudice. Bleiler testified at the hearing and was allowed to say whatever he wanted to say in his defense. (College App; Hearing Transcript Ex. F 7:6-11:14; 120:11-122:2.)

3

#12375596_v1

conflicts were in violation of the College's stated policies. Bleiler's primary reliance on the *dissent* in *Schaer v. Brandies University* in support of his breach of contract claims speaks for itself.

Collectively, the undisputed facts establish that Bleiler was charged with Sexual Misconduct I following C.M.'s incident reports, an investigation was conducted, a hearing was held, he testified, C.M. testified, both C.M. and Bleiler were given the opportunity to ask questions, other evidence acceptable to the panel was submitted, a panel of Bleiler's peers, College faculty, and staff found him responsible, and he was expelled as a result. Bleiler's belief that he did nothing wrong does not change these facts. C.M. believed that Bleiler did something wrong and the panel believed C.M. There was evidence on both sides. (*See* College App. Ex. F.) The panel evaluated the evidence and made a decision. *See generally* Response Facts.

### 2. *Nonresponsive and Unsupported Statements Should be Disregarded, Pursuant to Local Rule 56.1.*

Where straight-forward facts are presented by Holy Cross, Bleiler at times responds with statements that are not included in the proposed fact. For example, in paragraph 46, Holy Cross states that:

> 46. Holy Cross advises all students that to enter Holy Cross is to accept the rights and responsibilities of membership into the community, including "high standards of personal conduct and behavior." The College assumes all students will abide by the College's policies, rules, and regulations, including "Community Standards and Disciplinary Procedures," and will abide by state, local, and federal laws.

Response Facts ¶ 46. Instead of simply accepting this fact as undisputed, as required, Bleiler responded:

> Undisputed that this language is contained in the Student Handbook. Disputed that Holy Cross clearly communicates its expectations to incoming students, particularly as it relates to male students and the potential for allegations of sexual misconduct.

4

Other examples shows similar disregard for Local Rule 56.1. In paragraph 28, Holy Cross states that:

> 28. Six students at the College have been charged with Sexual Misconduct I since 2002.

Response Facts ¶ 28. Bleiler responded:

> Undisputed. Further, all six students at the College who have been charged with Sexual Misconduct I since 2002 have been male.

After admitting that the fact is not in dispute, Bleiler improperly introduces an additional fact.

In paragraph 71, Holy Cross states that:

> 71. Irish is present during panel deliberations to answer procedural questions.

Response Facts ¶ 71. Instead of responding to the statement, Bleiler responded:

> Disputed. Mr. Irish plays an active role in several aspects of the proceedings that influence the outcome, including the selection panel of members, the sharing of information as "training" that suggests one outcome over another, and, in this case, his participation in the deliberations of the panel and specifically his direction to the panel as to the appropriate sanction.

In paragraph 80, Holy Cross states that:

> 80. Dormitories had multiple floors and multiple Residential Advisors. For example, Bleiler lived in Mulledy Hall freshman year. It had four floors and a basement and thirteen Residential Advisors. Bleiler lived in Lehy Hall sophomore year. It had four floors and five Residential Advisors. (Bleiler Dep. 9-14; Potter Aff. App. Ex. A., tab 1.)

Bleiler responded:

> Undisputed to the extent that Mulledy Hall, where Bleiler lived freshman year, and Lehy Hall, where he lived sophomore year, had multiple floors and multiple Residential Advisors. Disputed to the extent that other "dormitories" at College of the Holy Cross generally had multiple floors and multiple Residential Advisors.

5

Response Facts ¶ 80. Bleiler failed to support the disputed portions of his response with citations to the record. All such unresponsive or unsupported statements should be disregarded and the facts deemed admitted pursuant to Locale Rule 56.1.

> B. **The Facts that Bleiler Disputes Are Conclusions Insufficient to Preclude Summary Judgment.**

Many facts that Bleiler disputes should be admitted because Bleiler fails to properly controvert them. Instead, he makes conclusory statements, not supported by the record, in opposition to these facts. To controvert material facts, plaintiff must present "a concise statement of the material facts of record as to which it contended that there exists a genuine issue to be tried, with page references to affidavits, depositions, and other documentation." *See* Local Rule 56.1. In Bleiler's responses, he draws many unfounded conclusions that are not supported by the record. Specifically, Bleiler draws conclusions in disputing facts 67, 68, 70, 71, 74, and 94.

Bleiler does not dispute that Irish had a practice of screening panel members for conflicts, or that Irish specifically asked Bleiler's panel members if they had any conflicts with Bleiler or C.M. *See* Response Facts ¶¶ 67, 68. Bleiler also does not dispute that, when Bleiler raised concerns about conflicts with Grant Greeley and Lauren Brais, Irish spoke with both students and confirmed that the students believed they did not have a conflict. *See* Response Facts ¶ 94. Rather, Bleiler conclusively asserts that Irish did not "proactively or effectively" screen panel members, nor did he have a "meaningful conversation" with Greeley or Brais regarding a potential conflict. *See* Response Facts ¶¶ 67, 94. In doing so, Bleiler mischaracterizes Irish's interactions with panel members and assumes new language in the Handbook.

One of Bleiler's assertions is that Irish was biased against him, allegedly evidenced by Irish's public interviews condemning sexual violence on college campuses. Bleiler argues that

6

#12375596_v1

Irish, cloaked with bias, improperly impinged on the panel's impartiality during deliberations simply by his presence and his role in answering administrative questions. Specifically, Bleiler disputes the following facts:

> 70. For each disciplinary hearing at the College, Irish's role is as an administrator. He serves as a resource for both complainants and respondents, schedules the hearing, assures all information is distributed, communicates with the witnesses about scheduling, assures the hearing is properly recorded, and answers procedural questions.
>
> 71. Irish is present during panel deliberations in order to answer procedural questions.

Response Facts ¶ 70, 71. Despite Irish's sworn testimony to these assertions, and one student panel member's corroboration of his administrative role, Response Facts ¶ 112, Bleiler vehemently disputes that Irish was impartial and simply doing his job:

> **Response** [to ¶ 70]: Disputed. Mr. Irish plays an active role in several aspects of the proceedings that influence the outcome, including selection of panel members, the sharing of information as "training" that suggests one outcome over another, and, in this case, his participation in the deliberations of the panel and specifically his direction to the panel as to the appropriate sanction.
>
> **Response** [to ¶ 71]: Disputed. [same as ¶ 70].

Bleiler provides no factual support for his conclusion that Irish "influences" the outcome in any way that could be considered improper or biased. Irish's role in the Holy Cross disciplinary process is outlined in both the Handbook and his deposition. There is no evidence that Irish deviated from the role properly assigned to him. Irish was doing his job by training panel members, choosing panel members to serve among those who were trained, and answering procedural and administrative questions during the deliberations.

C. **The Conclusory Statements, Unsupported Allegations, and Mischaracterizations of the Record in Bleiler's Local Rule 56.1 Statement Do Not Create a Genuine Issue of Material Fact.**

The movant's statement of facts will be deemed admitted when a non-moving party "makes conclusory statements," or when "the cited portion of the record often does not support the point for which it is cited." *Brown v. Armstrong*, 957 F. Supp. 1293, 1297-98 (D. Mass. 1997); *see also Gosselin v. Webb*, 242 F.3d 412, 414 n. 2 (1st Cir. 2001) (deeming a number of material facts admitted when denials not supported by evidence); *Preferred Mut. Ins. Co. v. Meggison*, 53 F. Supp. 2d 139, 145 (D. Mass. 1999) (disregarding unsupported statements of fact). Many of Bleiler's erroneous affirmative factual assertions mirror the conclusory statements he made in disputing the College's facts.

In Bleiler's Local Rule 56.1 statement, he asserts that the training materials provided to panel members for sexual misconduct cases are biased in favor of finding guilt of the accused. Specifically, Bleiler concludes without factual support that the training materials:

> (i) Direct panel members to engage in questioning that assumes the guilt of the accused . . . ;
>
> (ii) Discuss the negative effect of the admission of prior sexual history on the complainant but not on the accused;
>
> . . .
>
> (vi) Contain exercises that all are strongly slanted toward finding that non-consensual sex occurred, without any scenarios that lean toward a finding that consensual sex occurred.

Additional Facts ¶ 18. The College disagrees with Bleiler's conclusions. The training materials actually encourage "questions that elicit an open-ended response" that "will allow the accused party to answer as long as he or she desires, possibly yielding more information than requested." (Bleiler App.; Irish Dep. Ex. 4 at 6.) This type of questioning hardly "assumes the guilt of the accused," as suggested by Bleiler.

8

Further, the "Credibility Exercise" in the training materials asks students to consider two statements regarding prior sexual history, one which could be damaging to the complainant, and one to the respondent ("Complainant wants to testify that she has heard that the accused student has raped other women," "The accused student's fraternity brother wants to testify that he has heard around that the complainant is loose and easy."). (Bleiler App.; Irish Dep. Ex. 4 at 36.) This exercise is a clear prompt for trainees to discuss the implications of admission of prior sexual history on *both* the accuser and the accused.

In another distortion, Bleiler attempts to characterize the three "Case Scenarios" offered by the training materials as tipped in clear favor of finding that a sexual assault had occurred. The scenarios do no such thing. The scenarios are on the edge between responsibility and no responsibility, and likely are designed to encourage conversation and debate between trainees. Bleiler's conclusions are unsupported by the materials he cites. Moreover, Bleiler's conclusions are contrary to admitted facts. There have been six students at the College charged with Sexual Misconduct I since 2002. Only four of the six were found responsible.

As evidence of bias, Bleiler argues that Irish "in effect congratulated" the panel for finding Bleiler responsible for the violation by pointing out that Irish wrote: "[t]he way that we have handled these cases has been held up as a model." Additional Facts ¶¶ 28-29. Irish did no such thing. Irish was not referring to the findings. Irish was referring to the panel doing its job as required by law. Irish was referring to the methodology. Indeed, as the OCR made clear in the Dear Colleague Letter these complaints cannot be ignored on the ground that it was one person's word against another. Once a complaint is made, an investigation and hearing must follow, and a decision must be made without delay in order to comply with Title IX. (*See generally* Dear Colleague Letter, College App. Ex. D.) Irish struggled when he had to transmit

9

#12375596_v1

the decision to the Bleiler family. In an email sent to the Dean of Students on the evening of the hearing, Irish described the meeting in which he informed the Bleiler family of the panel's decision as "delivery of bad news." (College App.; Irish Aff. Ex. A.)

Finally, Bleiler claims that Irish demonstrated bias against him, and presumably all males, when he referred to the case as a "sexual assault" case and a "very serous" case before Bleiler had been "charged." Additional Facts ¶ 25. This weak assertion is of no consequence. Indeed, the case could reasonably be characterized as a very serious case and a sexual assault case. C.M.'s three statements submitted to public safety indicate that she did not consent to sex, believed she was assaulted, suffered a vaginal laceration, and even considered pressing criminal charges instead of disciplinary charges. (College App.; Bleiler Dep. Ex. 5, 6, 7; Potter Aff. App. Ex. A, tab 1). If Irish had not taken the case seriously, he would not have been doing his job.

### D. Adding Gratuitous and Immaterial Facts Does Not Preclude Summary Judgment.

Bleiler attempts to rely on several facts that are immaterial or irrelevant to the disposition of this case, whether disputed or not. For example, in an apparent attempt to raises suspicions of gender bias and suggest that the panel treated him unfairly, Bleiler claims that:

> There was evidence before the panel that C.M. at one point initiated contact with Mr. Bleiler's genitals, which was never even considered as a potential violation of the sexual misconduct policy–nor could it have been, as there was no "penetration."

Additional Facts ¶ 16. This claim is of no consequence to this case. Bleiler never made a claim of a violation of the sexual misconduct policy against C.M.

Throughout his pleadings, Bleiler suggests that the College's policy treats male students and female students differently when they are both incapacitated by alcohol. *See* Pl.'s Mem. at 12. But, likewise, Bleiler never claimed that he was incapacitated by alcohol during the incident.

10

(College App.; Hearing Transcript, Ex. F at 25-26.) Once again, the claim is of no consequence to this case.

### E. Bleiler's Suggestions That Certain Facts Mitigate His Responsibility Does Not Preclude Summary Judgment.

Bleiler attempts to mitigate his responsibility by including facts irrelevant to the incident. Bleiler admits that the Handbook provides that consent cannot be given by students incapacitated by alcohol. Yet, Bleiler asks the Court to consider that he was not responsible for C.M.'s intoxication. Additional Facts ¶¶ 12, 15. The fact that Bleiler was not responsible for C.M.'s intoxication is irrelevant. It is the fact of her intoxication during the incident which is relevant.

Further, Bleiler asserts that there was evidence before the panel that C.M. initiated contact with Bleiler's penis, which suggested improper conduct on C.M.'s behalf. Pl.'s Mem. at 13. Bleiler testified C.M. "began to touch [his] penis" at the hearing. (College App.; Hearing Transcript Ex. F 10:11-13.) C.M. in turn testified that Bleiler was the initiator of "each level of sexual activity." (College App.; Hearing Transcript Ex. F 114:22-115:1.) The panel was within its right to deem the statement of one party more credible than the other. Bleiler's reasonable expectations were not unmet simply because the panel believed C.M.'s statements over his. The inclusion of these facts, disputed or undisputed, does not preclude summary judgment.

Bleiler asks the Court to consider that there were no allegations of coercion or force. Additional Facts ¶¶ 11, 12, 15. In fact, C.M. made allegations of force. Response Facts ¶¶ 16, 17, 18. Nonetheless, the inclusion of this as a fact, disputed or undisputed, is not relevant to any of Bleiler's claims. Bleiler was found responsible for violating the sexual misconduct policy because the panel determined that:

> Edwin, as the initiator did not seek, nor did he receive, effective consent for sexual activity and intercourse with [C.M.] on May 1, 2011

> . . .
>
> [t]he board also determined that Caitlin was highly intoxicated, incoherent and unaware of the circumstances. As such, the board deemed her to be physically helpless at the time of the incident. The board determined that due to her incapacitation [C.M.] could not consent to sexual activity.

(College App.; Bleiler Dep. 111 Ex. 17; Potter Aff. App. Ex. A, tab 1.)

Force may be involved but there is nothing in the policy which suggests it must be involved. The issue was effective consent as defined in the policy. The panel determined that Bleiler did not obtain effective consent and that C.M. was not capable of granting such consent.

### F. Bleiler Suggests Facts that are False.

In his fact statement, Bleiler asserts that:

> At the hearing, the Chair of the panel made reference to [Bleiler's roommate's] statement, but it did not appear that the other panel members had a copy of the statement.

Additional Facts ¶ 55. The hearing transcript belies Bleiler's suggestion.

> **MR. BLEILER**: I just wanted to say that the only witness that I had couldn't be available today and just to inform the Board again that he submitted a written statement.
> **CHAIRMAN**: Okay. And this was Brendan--
> **FEMALE PANEL MEMBER**: McCree or something?
> **CHAIRMAN**: --McCree?
> **MR. BLEILER**: McCree, yup.
> **CHAIRMAN**: Yea, okay.
> **MR. IRISH**: They got that.
> **CHAIRMAN**: And we have--we had--
> **MR. BLEILER**: No, I just wanted to make sure.
> **CHAIRMAN**: Right, yeah, we do have his statement and we have read his statement.

(*See* College App.; Hearing Transcript Ex. F 102:20-103:12.) The hearing transcript speaks for itself. Bleiler suggests that the Chairman alone referred to the statement. In fact the Chairman, Irish, and a female panel member referred to the statement. Further, the Chairman did more than

12

"refer" to the statement, as Bleiler claims. The Chairman acknowledged the panel received it and read it.

In another attempt to distort the record, Bleiler states that:

> Irish's bias in favor of the complainant was also starkly evident in his actions. He reached out to several professors on C.M.'s behalf, in an attempt to find her an appropriate student advisor but did not do the same for Mr. Bleiler, who he merely informed that he needed to submit the name of an advisor by a specific deadline.

Additional Facts ¶ 22. In fact, an email suggests that Irish contacted a faculty member on C.M.'s behalf because she asked him to, and because she did not personally know any of the faculty suggested. (College App.; Irish Aff. Ex. B.) There is no evidence to suggest that Bleiler sought Irish's assistance in the same way. Further, the email states that "I sent the students, *charged and complaining*, a list of 10 professors who have advised students in the past, or had been board members in the past." (College App.; Irish Aff. Ex. B. (emphasis added)). The charged and complaining students were treated equally. Irish did more than "merely inform[]" Bleiler of a deadline for submitting an advisor.

## **CONCLUSION**

For the foregoing reasons, and upon the authorities cited, Holy Cross is entitled to summary judgment as a matter of law.

Respectfully submitted,

THE COLLEGE OF THE HOLY CROSS

By its attorneys,

/s/ Harold W. Potter, Jr., Esq.

Harold W. Potter, Jr. (BBO # 404240)
harold.potter@hklaw.com
Amanda Orcutt Amendola (BBO # 684504)
amanda.orcutt@hklaw.com
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116-3889
(617) 523-2700

CERTIFICATE OF SERVICE

    I certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date specified below.

/s/ Harold W. Potter, Jr.
Harold W. Potter, Jr.

Dated: February 25, 2012